UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSHUA SHANE DUFFY, | ) | |
| Petitioner, | ) | |
| | ) | Cause No. 1:20-cv-02684-JRS-DML |
| v. | ) | [1:16-cr-0257-JRS-TAB-01] |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM IN OPPOSITION
TO 28 U.S.C. § 2255 MOTION**

This Court should deny Joshua Shane Duffy's 28 U.S.C. § 2255 motion.

Several procedural problems preclude his claims.  One, his motion is time barred.

The Court should dismiss his claim for that reason alone.  Two, he raises claims

outside the context of ineffective assistance of counsel, which are both waived and

procedurally defaulted.  The Court should summarily dismiss those claims.  Three,

his ineffective assistance of counsel claims, while not waived, are waived as

undeveloped and confusing.  The Court should deny them on that ground alone.

Procedural issues aside, his claims are meritless and should be denied substantively

as well.

The Court should deny this motion.

**BACKGROUND[1]**

---

[1] Throughout the brief, the government will make the following references:  D. = the
docket in this case; Crim. D. = the docket in Duffy's criminal case, Cause No. 1:16-
cr-0257-JRS-TAB-01; App. D. = the Seventh Circuit appeal case, Cause No. 19-1373;
PSR = Duffy's presentence report; July 16, 2018 Tr.  = transcript of July 16, 2018 *ex*

## *Duffy's Criminal Conduct and Charges*

As stipulated in Duffy's plea agreement, the facts of his crimes are as follows:

[In 2016, Minor Victim 1's] mother . . . found a video on Minor Victim 1's cell phone showing an adult male engaged in sexually explicit conduct with Minor Victim 1.  The video was filmed in a room at Minor Victim's home in the Southern District of Indiana using a cellular phone.

Minor Victim 1 [who was 15 years old] told her mother that the male in the video was named "Shane".

Minor Victim 1's cell phone. . . contained text messages . . . between Minor Victim 1 and an adult male.

One message included the following statement by Minor Victim 1:  "I'll do anything to make it up to you.  Please Stop!", "No.. Take me back.  Beat me.  Do anything.  Don't come I've there *here."

During [a] conversation . . . [an] adult male threatened that he is going to call the mother of Minor Victim 1 or come to her residence and tell her everything.

Minor Victim 1 begged him not to call her mother and promised to do anything the person wanted to do, saying "I'll do anything to make it up to you.  Please stop!", "No.. Take me back.  Beat me.  Do anything.  Don't come I've there *here".  "I'll take the pain, I'll obey.  Just don't get me in trouble please.."

The adult male stated "and when I get there guess what…ur gonna get ur ass beat then fucked"

As the adult male drove to the residence, he stated: "remember what to do before I sneak in right".  Minor Victim 1 responded, "Yes, set up my phone?"

The adult male responded "yea facing the couch and hit record before I come in and be w earing what I asked u to" and "ok go ahead set up ur phone make sure it's at a good Angle. hit record and come to the window".

---

*parte* status conference; P. Tr. = transcript of Duffy's February 5, 2019 guilty plea hearing; S. Tr. = transcript of Duffy's February 19, 2019 sentencing hearing.

Minor Victim 1 responded "Okay" on June 2, 2016 at 12:48:22 hrs (UTC-4).

. . . [T]he cellular phone of Minor Victim 1 recorded a video for 41 minutes and 31 seconds.

[the video showed] . . . an adult male engaging in multiple sex acts with Minor Victim 1, including oral and vaginal intercourse.  Both persons are readily identifiable.

. . . [T]he adult male sent a sms message that read, shaneduffy4@gmail.com and asked "did you send it". This message was sent after the video noted above was produced.

Minor Victim 1 responded:  "This is stupid… If I'm gonna email this to you I'd have to send you like 5 clips because it's too long".

The adult male then stated:  "just send em in clips then" and "I wanted to watch before bed".

A few minutes later, Minor Victim 1 sent 5 emails with attachments to the adult male at his email address .shaneduffy$@gmail.com.

. . . Minor Victim 1 . . . sent the video of herself and "Shane" engaged in sexually explicit conduct to an email address he provided her. . . She sent the video at his request. . . [T]he main video was split into separate parts to make it small enough to send . . . .

From a photo array, Minor Victim 1 identified Duffy as the person she knew as "Shane".

"Shane" was identified as the Defendant, Joshua Shane Duffy, with a date of birth in 1986.

[Minor Victim 2,] a 14-year old female[, also] met . . . Duffy [online]. They met on a cellular phone application named "Whisper".

. . . Minor Victim 2 disclosed that on multiple occasions, she secretly left her home and met Duffy at his insistence.  Duffy arranged these meetings by communications with the girl through their cellular phone applications.

On at least two occasions, Duffy and Minor Victim 2 engaged in sexual acts at his request.

Minor Victim 2 told Duffy she was 14 years old and a Freshman in high school.

Minor Victim 2 stated that she used Snapchat and Kik to send unclothed pictures and videos of herself to Duffy.  She did this because he told her to do so.

Minor Victim 2 stated Duffy told her to put her fingers inside herself in the videos she sent to him.  Minor Victim 2 said she sent videos of herself doing this to Duffy through Snapchat.  Based upon her description of the content of these videos, they would constitute a visual depiction of a minor engaging in sexually explicit conduct.  However, these images were not recovered during the investigation.

Minor Victim 2 stated that Duffy's online user name for Snapchat, KIK and Instagram was JoshD2411.

From a photo array, Minor Victim 2  identified Duffy as the person she knew as "Shane".

(Crim. D. 67, ¶¶ 28-63.)

In, 2016, Duffy was charged with sexual exploitation of Minor Victim 1, in violation of 18 U.S.C. § 2251(a) (Count 1); coercion and enticement of Minor Victim 1, in violation of 18 U.S.C. § 2422(b) (Count 2); sexual exploitation of Minor Victim 2, in violation of 18 U.S.C. § 2251(a) (Count 3); coercion and enticement of Minor Victim 2, in violation of 18 U.S.C. § 2422(b) (Count 4); and attempted possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 5.)  (Crim. D. 16.)

### *Pretrial Litigation*

The Court appointed Kimberly Robinson as counsel.  (Crim. D. 11.)   During her representation, Robinson filed one motion to continue Duffy's trial because she

needed additional time to review and analyze discovery, research sentencing and other matters, and confer with Duffy. (Crim. D. 28.)

On January 25, 2017, Robinson filed a motion to withdraw. (Crim. D. 30.) The Court granted Robinson's motion to withdraw. (Crim. D. 31.)

Thereafter, the Court appointed Charles Hayes. (Crim. D. 32.) Hayes filed five motions to continue. Hayes's first continuance was requested because he had recently been appointed and needed additional time to prepare for trial. (Crim. D. 34.) Hayes's four additional continues were requested because the parties were engaged in plea negotiations. (Crim. D. 36, 38, 40, 45.) The Court found good cause and granted all of Hayes's motions to continue the trial. (Crim. D. 35, 37, 39, 41.)

During plea negotiations, the United States presented a plea offer in which it would dismiss counts 2, 3 and 5 in exchange for a term of imprisonment between 20 and 25 years. (Government's Exhibit A).

On June 7, 2018, the Court received a *pro se* letter from Duffy, along with a motion to dismiss Hayes as counsel. (July 16, 2018 Hearing Tr., p. 2.) Five weeks later, the Court held an *ex parte* hearing to discuss Duffy's letter. (*Id*.) Duffy informed the Court that Hayes "has 'great advice,'" but he wished to have new counsel because he was having difficulty reaching Hayes to discuss his case. (*Id*., p. 4.) The Court informed Duffy that if Hayes were allowed to withdraw and additional counsel were appointed, new counsel would need additional time and that could result in another continuance of Duffy's trial. (*Id*., pp. 4-5.) Duffy assured the Court that he had "no problem" with that. (*Id*., p. 5.)

Accordingly, the Court allowed Hayes to withdraw.  (*Id*.)  Hayes informed the Court and Duffy that the government instituted a July 31, 2018 deadline for its plea offer.  (*Id*.)

On August 1, 2018, the Court appointed Kenneth Riggins.  (Crim. D. 53.) Fifteen days later, Riggins moved to continue the final pretrial conference because he needed more time to evaluate the evidence and confer with Duffy.  (Crim. D. 54.)

### *Duffy's Guilty Plea and Sentencing*

#### 1. *Plea Agreement*

Despite Duffy's request for new counsel, the government continued to hold open same plea offer.  Duffy ultimately accepted the government's plea offer— identical to the one presented to Hayes—and the parties filed a petition to enter a plea of guilty and plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  (Crim. D. 67; Government's Exhibit A.)

Duffy agreed to plead guilty as charged to Counts 1 and 4, and the government agreed to dismiss Counts 2, 3 and 5.  (Crim. D. 67.)  The parties agreed that the Court should sentence Duffy to a term of imprisonment between 20 and 25 years.  (*Id*. ¶ 9A.)  The parties further agreed that supervised release must be ordered for a period of at least 60 months and up to life imprisonment.  (*Id*. ¶ 9B.)

The parties also agreed that the Court would determine the appropriate advisory sentencing guideline range.  (*Id*. ¶ 67.)  However, the government agreed that three levels would be subtracted for acceptance of responsibility under U.S.S.G § 3E1.1(a) and (b).  (*Id*. ¶ 68.)

Duffy agreed to waive his right to appeal the conviction and sentence. (*Id.* ¶ 69.) In addition, Duffy agreed not to contest or seek to modify his conviction or sentence in any action, including § 2255 (excepting ineffective assistance of counsel claims). (*Id.* ¶ 70.)

### 2.   *Presentence Report*

Prior to sentencing, U.S. Probation prepared a presentence report (PSR). (Crim. D. 77.)   Duffy's total offense level was 42 (after the three-level reduction for acceptance of responsibility). (PSR ¶¶ 44, 45, 46.) His criminal history category was VI. *(Id.* ¶¶ 71, 72.)* Thus, his guideline imprisonment range was 360 months to life. *(Id.* ¶ 113.)*

The convictions also carried statutory minima and maxima. For Count 1, the range was 15 to 30 years. *(Id.* ¶ 111.)* For Count 4, the range was 10 years to life. *(Id.* ¶ 112.)* The statutory and guideline range for supervised release for counts 1 and 4 was a mandatory term of five years to life per count. *(Id.* ¶¶ 114-16.)*

### 3.   *Accept/Reject and Change of Plea Hearing*

A change of plea hearing was held on February 5, 2019. (Crim. D. 76.) At the hearing, the Court accurately advised Duffy of the charges and his sentencing exposure. (P. Tr., pp. 4-9.) Duffy confirmed that he understood and wanted to accept the plea agreement. (*Id.*, pp. 10-11.)

Duffy advised the Court that he had a bachelor's degree in psychology and had never been treated for any mental illness or addiction to narcotic drugs of any

kind.  (*Id.*, p. 12.)  Duffy also confirmed that no one made any promise or assurance to him to persuade him to plead guilty.  (*Id.*, p. 15.)

The Court also reviewed the waivers in the parties' plea agreement.  (*Id.*, pp. 33.)  Duffy confirmed that he understood that he was waiving his right to appeal his conviction and sentence.  (*Id.*, p. 33.)

The Court accepted the plea agreement and adjudged Duffy guilty to Counts 1 and 4.  (*Id.*, pp. 35-36.)  Duffy confirmed that he was satisfied with Riggins's representation.  (*Id.*, p. 13.)

### 4. *Sentencing Hearing*

A sentencing hearing was held on February 19, 2019.  (Crim. D. 81.)   Duffy did not have any substantive objections to the PSR, which the Court adopted.  (S. Tr., pp. 5-7, 11-12.)

In his allocution, Duffy explained his childhood, sexual abuse, anger issues, and struggles staying out of trouble.  (*Id.*, pp. 13-18.)  Duffy also apologized to his family and the victims' family.  (*Id.*, pp. 17-18.)

The Court sentenced Duffy to a term of 25 years' imprisonment, followed by a term of lifetime supervised release.  (*Id.*, pp. 59-60.)

The government then asked for Counts 2, 3 and 5 to be dismissed, and the Court granted its request.  (*Id.*)

### *Duffy's Appeal*

On February 28, 2019, Duffy filed a timely *pro se* notice of appeal.  (Crim. D. 84.)  Riggins subsequently filed a motion to withdraw from the case, and the Seventh Circuit granted the motion.  (App. D. 10, 16.)

On April 16, 2019, attorney Colleen McNichols Ramais filed an appearance on behalf of Duffy.  (App. D. 17.)  Two months later, Ramais moved to dismiss Duffy's appeal.  (App. D. 18.)  With her motion, she attached a statement of consent signed by Duffy in which Duffy acknowledged that he was informed of his attorney's intention to move to dismiss his appeal, and he concurred.  (*Id.*)

On June 12, 2019, the Seventh Circuit dismissed his appeal.  (App. D. 19.)

### 28 U.S.C. § 2255 Motion

On March 23, 2020, Duffy filed a motion for extension of time to file a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  (Crim. D. 101.)   On April 1, 2020, the Court denied Duffy's motion because § 2255 does not provide for extensions of time.  (Crim. D. 102.)  On October 13, 2020, Duffy filed a *pro se* motion to vacate his sentence under § 2255.  (D. 1.)

### STANDARD OF REVIEW

"Relief under § 2255 'is reserved for extraordinary circumstances.'"  *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)).  The reason is straightforward: "because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

"Hence, relief is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)); *see* 28 U.S.C. § 2255(a).

## DISCUSSION

### I.   Duffy's § 2255 Motion is Time-Barred

Duffy's motion is time-barred. A motion by a federal prisoner for post-conviction relief under § 2255 is subject to a one-year time limitation that runs from:

> 1. the date on which the judgment of conviction becomes final;

> 2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> 3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> 4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Duffy's motion is untimely under § 2255(f). His convictions became final on September 10, 2019 (*i.e.*, 90 days from the Seventh Circuit's June 12, 2019 dismissal of Duffy's appeal). *Clay v. United States*, 537 U.S. 522, 524 (2003) (sentence becomes "final" for postconviction relief purposes when the time for filing a petition

10

for certiorari expires); *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008) (if a petitioner files an appeal and voluntarily dismisses it, the one year clock begins to run 90 days after the dismissal); *see also* Sup. Ct. Rule 13 (providing 90 days after entry of judgment to file a petition for writ of certiorari). Accordingly, Duffy had until September 10, 2020, to file a timely § 2255 motion. 28 U.S.C. § 2255(f)(1).

He did not. Instead, he filed his motion on October 13, 2020. (D. 1.) That was too late. Thus, this Court should dismiss Duffy's motion as untimely.

Recognizing he was late, Duffy attempted to back date his § 2255 motion to avoid this outcome. On the signature page of Duffy's § 2255 motion, he certified that he signed his motion on May 18, 2020. (D. 1, p. 33.) He attached a letter to the motion, claiming that he had previously mailed the § 2255 motion to the Court on May 11, 2020, and the enclosed § 2255 was a secondary copy of the one that he had previously mailed. (D. 1, p. 34.) Obviously, Duffy could not have signed his § 2255 motion seven days after he purportedly placed it in the prison mailbox for service. The Court should not credit this clear attempt to evade the limitations period.

Moreover, the criminal docket reflects that Clerk of Court received Duffy's § 2255 motion on October 13, 2020—five months after Duffy purportedly signed his motion, and, in all events, 33 days too late. (D. 1, p. 1.)

Duffy's motion is untimely under § 2255(f)(1). And he does not contend that his claims fall under the remaining § 2255(f) factors, and nothing about his motion would indicate that his claims would anyway.

Nor does he claim he is entitled to equitable tolling.  Even if he did, no basis for equitable tolling is apparent from his pleading.  Equitable tolling is reserved for "extraordinary circumstances far beyond the litigant's control that prevented timely filing."  *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004) (internal punctuation omitted).  In fact, it "is such exceptional relief that [the Seventh Circuit] ha[s] yet to identify a circumstance that justifies equitable tolling in the collateral relief context."  *Id*. (internal quotations omitted).  Duffy has not satisfied that standard.

Accordingly, Duffy's § 2255 motion is time-barred and should be summarily dismissed with prejudice.

## II.     Ineffective Assistance of Counsel Standard of Review

In order to prove ineffective assistance of counsel, Duffy must meet the two-part test established in *Strickland v. Washington,* 466 U.S. 668 (1984).  He must show that (1) his attorney performed deficiently, and (2) the deficiency in performance prejudiced him.  *Id.*

In evaluating whether counsel's performance was deficient, "the court must defer to counsel's tactical decisions," avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness.  *Strickland*, 466 U.S. at 689; *Holman v. Gilmore*, 126 F.3d 876, 881-81 (7th Cir. 1997).  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v.*

12

*Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

The prejudice prong of the *Strickland* test requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *see also Bell v. Cone*, 535 U.S. 685, 697-98 (2002).

A court "need not consider the first prong of the *Strickland* test if [it] find[s] that counsel's alleged deficiency did not prejudice the defendant." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003) (*citing Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

Duffy's right to effective counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  On the performance prong, Duffy must show that counsel's representation in connection with the plea process "fell below an objective standard of reasonableness." *Id.* at 163 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  In this context, the Court must take particular care to avoid the "distortions and imbalance that can inhere in a hindsight perspective[.]" *Premo v. Moore*, 562 U.S. 115, 125 (2011).

To establish prejudice, Duffy must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.  Thus, Duffy "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had they been afforded effective assistance of counsel," that he would have done so before the prosecution canceled it, that the court would have accepted it, and "that the end result of the criminal process would have been more

13

favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Moreover, Duffy's claims must be viewed in context of his guilty plea. "Surmounting *Strickland*'s high bar is never an easy task." *Lee*, 137 S. Ct. at 1967 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "[A]nd the strong societal interest in finality has 'special force with respect to convictions based on a guilty plea.'" *Id.* (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Thus, "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.*

Duffy's claims are as expansive as they are confusing: spanning approximately 36 pages against three different defense attorneys, the government, and the Court. Thus, the government has combined Duffy's duplicative arguments and will discuss each issue separately below.

## III. Duffy Fails to Show That Robinson and Hayes Were Ineffective During the Plea Process

### A. Robinson Was Not Ineffective For Failing to Notify Duffy of a Nonexistent Plea Offer

Duffy first argues that Robinson was ineffective for failing to notify him of a pre-indictment plea deal offered by Assistant United States Attorney Steve DeBrota. (D. 1, p. 4.) Duffy claims that the deal was for a term of 180 to 210 months' imprisonment if he waived indictment, and that if Robinson had presented to plea offer to him, he would have readily accepted it. (*Id.*)

14

This is not a viable claim.  Robinson's representation had barely begun when Duffy was indicted, and the parties did not engage in any plea discussions prior to Duffy's indictment.  That comports with the government's standard practice.

Nor should this Court accept Duffy's unsupported, and unlikely, assertions otherwise.  He has not presented any evidence to support this claim.  He has not filed an affidavit and "statements in a motion are not evidence and are not entitled to any evidentiary weight." *Topi v. Mukasey*, 264 F. App'x 504, 506 (7th Cir. 2008) (unpublished) (citing cases).  That suffices to deny his claim; petitioners cannot seek collateral relief by a blanket assertion in a motion that a better plea existed.

Nor has he disclosed or explained how or when he first learned of this purported plea offer.  (In fact, it is unclear how he could know about any such purported plea if his attorney did not inform him of it.)  This allegation is perfunctory and undeveloped, and Duffy's claim is waived.  *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).  Duffy cannot show deficient performance.

Nor can he show prejudice.  The contemporaneous evidence does not support his claim.  *Lee*, 137 S. Ct. at 1967.  There is no evidence on the record to reflect that the parties had even begun discussing plea negotiations during any time that Robinson was Duffy's attorney.

Duffy cannot show prejudice.

## B. Hayes Was Not Ineffective For Failing to Notify Duffy of a Nonexistent Plea Offer

Similar to the above claim**,** Duffy also claims that Charles Hayes refused a 20-year plea offer without notifying him of the plea offer.  (*Id*., p. 4.)  Duffy contends

that he did not find out about this offer until about one and one-half years after Hayes was no longer representing him.  (*Id*.)

This, too, is not a viable claim.  Duffy has not presented any evidence to support this claim.  *Topi*, 264 F. App'x at 506.  Nor has he disclosed or explained specifically how or when he found out about this purported plea offer.  His claim is waived.  *Holm*, 326 F.3d at 877.

Moreover, the contemporaneous evidence in this case contradicts Duffy's allegations.  At the July 16, 2018 *ex parte* hearing, Hayes informed the Court about the pending plea offer with the government:

> THE COURT:  All right.  I think that we will allow Mr. Hayes to withdraw his appearance in this matter.  I will refer the matter back over to the Community Defender's office, and they will then have another attorney enter an appearance in your behalf, Mr. Duffy.  I'm assuming that that attorney then will contact you very quickly, and decisions can be made whether or not this matter is to go forward on the 17th.  I would ask Mr. Hayes that whatever information that you have in your file with regards to Mr. Duffy be turned over to successor counsel.

> MR. HAYES:  I will do that immediately, Your Honor.  I Do think it is important that I make sure this is addressed. There is a plea deadline on this case of July 31st the Government has instituted.  I have no idea whether they'll be flexible with extending that with new counsel, but I think it's important that that be clear at this point.

> THE COURT:  All right.  I would suggest that if new counsel communicates with you, that you will let them know, and Mr. Duffy, I assume you also are aware of that deadline.  If you would also communicate that to successor counsel?

> THE DEFENDANT:  Yes, Your Honor.

(July 16, 2018 Tr., pp. 5-6.)

Duffy not only confirmed that he was aware of the government's plea offer, but he agreed to ensure that his successor counsel was aware of the offer. (*Id.*, p. 6.) And, at the change of plea hearing, the government confirmed that the 20 to 25 year plea offer was the best offer the government would make. (P. Tr., p. 8.) At no time during this hearing, or any other hearing, did Duffy inform the Court that the government had offered a 20 year plea deal (because no offer ever existed).

So, contrary to Duffy's *post hoc* claims here, the record is clear that Hayes presented the government's plea offer to Duffy, and the offer was not a 20-year plea deal. (*See* Government's Exhibit A.) Hayes was not deficient.

Moreover, Duffy cannot show prejudice. As above, *see* Part III.A.2, Duffy cannot show prejudice from a nonexistence plea offer.

Duffy cannot show ineffective assistance of counsel.

## IV.    Duffy Cannot Show Ineffective Assistance for Failing to File a Notice of Appeal When Duffy Filed a Timely Notice of Appeal

Duffy claims that Riggins was ineffective for failing to file a notice of appeal after he instructed him to do so. (D. 1, p. 6.)

This claim is as confusing as it is incorrect. Duffy did file a timely notice of appeal. (Crim. D. 84.) This claim is therefore effectively moot.

To the extent Duffy complains that Riggins himself did not file a notice of appeal, that is irrelevant. When a defendant expressly requests an appeal, and an attorney fails to do so, a presumption of prejudice arises. *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019). But the remedy to that prejudice is an opportunity to file a new

17

notice of appeal.  *Id.*  Duffy had that opportunity here—he filed a timely notice of appeal and had counsel on appeal.[2]  (App. D. 19.)  No relief can be granted here.

## V. Duffy Cannot Show Ineffective Assistance of Counsel When His Attorneys Strategically Filed Appropriate Continuance Motions

Duffy claims that all of his attorneys violated his rights under the Speedy Trial Act because they all refused to allow him to exercise his rights to a speedy trial.  (D. 1, pp. 4-9.)

This claim is also a nonstarter.  His attorneys requested continuances to prepare Duffy's case and engage in plea negotiations.  (Crim. D. 28, 34, 36, 38, 40, 45, 54.)  These were tactical choices.  *United States v. Hills*, 618 F.3d 619, 628 (7th Cir. 2010).  While Duffy now claims he did not want these continuances, "there is no requirement that counsel obtain the defendant's consent prior to making purely tactical decisions such as the decision to seek a continuance."  *Id.* (citing *United States v. Gearhart*, 576 F.3d 459, 463 n.3 (7th Cir. 2009)) (internal brackets omitted).  This is not a viable ineffective assistance of counsel claim.

Beyond that, considering the reason for the continuances, Duffy could not show prejudice.  These decisions to take the time to work on the defense's case *helped* Duffy.  *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir. 1984).

Besides legally unfounded, Duffy's claim is also factually incorrect.  Prior to Riggins's appointment, Duffy assured the Court that he had "no problem" if new counsel required more time to prepare for trial.  (July 16, 2018 Tr., p. 5.)  And, while

---

[2] Regardless, Duffy could not meet the *Garza* standard because he told Riggins that he wanted to write his own appeal.  (App. D. 10, ¶ 2.)

Duffy also alleges that he filed his own motions for a speedy trial on January 17, 2017 and on March 27, 2017, (D. 1, p. 8), the docket does not reflect any *pro se* motions requesting a speedy trial.  Duffy was not pushing for a speedy trial.

Duffy cannot show ineffective assistance of counsel.

## VI.    Duffy Cannot Show Ineffective Assistance of Counsel Regarding Discovery Because His Attorneys Need Not Have Shared It With Him

Duffy claims that all of his attorneys failed to allow him to review the discovery, thereby denying him the right to aid in his own defense and make informed decisions about any plea offer.  (D. 1, pp. 10-11.)

This claim fails for several reasons.  As an initial matter, Duffy does not identify the discovery materials that he wished to review and investigate, nor does he provide any details as to the contents of those discovery materials.  Such "perfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

Regardless, Duffy was not constitutionally entitled to discovery.  *United States v. Shrake*, 515 F.3d 743, 745 (7th Cir. 2008) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Gray v. Netherland*, 518 U.S. 152, 168 (1996)).  And Duffy "has not identified any . . . source for his entitlement to the document[s], and many courts have held that there is no such right."  *United States v. Stork*, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014) (citing cases).

That rule applies two-fold here.  The discovery here was child pornographic materials.  And federal law precludes a defendant from obtaining a copy of child pornography in preparation for trial.  *See* 18 U.S.C. § 3509(m)(2)(A).  Thus, the government  properly made Duffy's discovery available to all of his attorneys for review.  18 U.S.C. § 3509(m)(2)(A) and (B)

Duffy cannot show ineffective assistance of counsel.

## VII.  Defense Counsel Was Not Ineffective When Investigating Mitigating Evidence for Sentencing

Duffy alleges that Riggins failed to investigate his life history, physical, sexual and emotional abuse, severe familial issues, and diminished mental capacity.  (D. 1, p. 7.)  Duffy claims that "he advised defense counsel several times about [his] severe mental health disabilities, such as ADHD, Bi-polar disorder, severe TSD (from physical, sexual and emotional abuse as a child and adult), manic depressive disorder and others," but no mental evaluation was ever done.   (*Id.*, p. 22.)

### A.  Trial Counsel Was Not Deficient for Failing to Investigate Duffy's Life History, Abuse, Family Issues and Mental Health

Duffy cannot carry his burden here.  A "petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced."  *Hardamon v. United States,* 319 F.3d 943, 951 (7th Cir. 2003).

He does not do so.  He provides no details about what evidence, information or mitigating factors that Riggins failed to investigate or "look into," what an

investigation would have discovered, or what he could have argued on Duffy's behalf. (D. 1, p. 6.) The Court should deny his claim for this reason alone.

Regardless, the record shows that Riggins did investigate. Prior to sentencing, Riggins filed a sentencing memorandum addressing Duffy's childhood and background. (Crim. Dkt., pp. 3-6.) Riggins's sentencing memorandum addressed Duffy's difficult childhood, abuse in prison, and lack of counseling. (*Id.*) Put differently, Riggins clearly investigated Duffy's history, mental illness and abuse. Thus, Duffy cannot show that Riggins was deficient.

Nor can he show prejudice. This information was before the Court at sentencing—in the PSR and the sentencing memorandum. Thus, the Court considered this information and sentenced Duffy as such. Duffy cannot show that he would have received a better sentence otherwise.

Duffy has not shown ineffective assistance.

### B.   Trial Counsel Was Not Deficient for Failing to Request a Mental Health Evaluation Because No Bona Fide Doubt Existed as to Duffy's Competence

"When the defendant argues that counsel should have pursued a fitness hearing, the question is whether there is a reasonable probability that the defendant would have been found unfit had a hearing been held." *Anderson v. United States*, 865 F.3d 914, 921 (7th Cir. 2017) (citing *Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013)) (internal quotations omitted). Courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* (citing *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012)) (internal quotations omitted).

An attorney should request a competency evaluation when a "bona fide" doubt exists as to a defendant's competency. *See, e.g., Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009).

To have been competent, Duffy must have had sufficient "ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). In order to have competently pleaded guilty, Duffy needed to "understand the significance and consequences" of the plea. *Id.* (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (internal brackets omitted)).

The record shows some indication of mental health issues. (S. Tr., p. 58.) But "[t]he fact that a person suffers from a mental illness does not mean that he's incompetent to stand trial." *Price v. Thurmer*, 637 F.3d 831, 833 (7th Cir. 2011). Instead, to be competent, Duffy needed only to "be able to follow the proceedings and provide the information that his lawyer needs in order to conduct an adequate defense, and to participate in certain critical decisions." *Id.* (citing *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *Dusky*, 362 U.S. 402; *Woods v. McBride*, 430 F.3d 813, 817 (7th Cir. 2005)).

Nothing in the record suggests that Duffy was unable to follow the proceedings, provide information to trial counsel, or participate in critical decisions.

22

Neither trial counsel, the prosecutor, nor the Court ""suggest[ed] his incompetence 'provides substantial evidence of [Duffy's] competence.'" *United States v. Downs*, 123 F.3d 637, 641 (7th Cir. 1997) (quoting *United States v. Garrett*, 903 F.2d 1105, 1117 (7th Cir. 1990)).  And the parties to the proceeding, including the Court, are "'always in the best position' to determine the need for a competency hearing." *Id.* at 641 (quoting *Chichakly v. United States*, 926 F.2 d 624, 632 (7th Cir. 1991)).

Instead, the record shows that Duffy was competent.  And, in fact, at the change of plea hearing, Duffy denied suffering from any sort of mental illness that would interfere with his ability to understand and participate in the proceedings:

> THE COURT:  Have you been treated for any mental illness or addiction to narcotic drugs of any kind?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Are you under the influence of any drug, medication, or controlled substance of any kind that would interfere with your ability to understand what's going on here today?
>
> THE DEFENDANT:  No.

(P. Tr., p. 12.)  There was therefore little reason to have a bona fide doubt about Duffy's competence prior to his guilty plea.  Thus, his claim fails.

Prior to sentencing, however, Duffy changed his story and told the probation officer that he had been treated for mental illness.  (PSR ¶¶ 95, 96.)  Duffy claimed that he was diagnosed with attention deficit hyperactivity disorder (ADHD) and bipolar disorder at age seven.  (PSR ¶ 95.)  He was initially prescribed Ritalin, though that was changed to Adderall and Wellbutrin, which he took until age 16. *(Id.)*  Meanwhile, at age 12, Duffy claims that he was diagnosed with severe

23

depression.  (*Id*.)  Duffy reported that he had not taken any medication since 2002, and he had not seen a psychiatrist since shortly before his release from prison in 2009.  (*Id*.)  This subsequent information is only relevant post-guilty plea.

The record also contradicts Duffy's allegation that the government, defense counsel and the Court agreed that he has "severe" mental disabilities, but no one ever requested a mental health evaluation.  At the sentencing hearing, defense counsel informed the Court that Duffy had undiagnosed mental illnesses that were neglected for a large portion of Duffy's life.  (S. Tr., p. 22.)  But Riggins never stated that Duffy has "severe" mental illnesses, and the government never even discussed Duffy's mental health.  Nor did the Court.  The Court found that "there's some indication of mental health challenges, instabilities and such that need to be taken into account."  (*Id*., p. 58.)

Duffy has failed to show ineffective assistance of counsel.

## VIII.  Duffy's Remaining Ineffective Assistance of Counsel Claims Are Underdeveloped And Waived

Duffy raises several additional ineffective assistance of counsel claims that are even more underdeveloped than the above arguments, and he provides no evidence or argument in support of any of these claims.

As such, these claims are waived, and the Court should deny these claims on that basis. *Berkowitz*, 927 F.2d at 1384; *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993) ("While the courts liberally construe pro se pleadings as a matter of course, judges are not . . . required to construct a party's legal arguments for him.") (internal citation omitted); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

24

1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").  "Judges are not like pigs, hunting for truffles buried in briefs." *Dunkel*, 927 F.2d at 956.

Regardless, these claims fail.  First, Duffy claims that Hayes refused to file motions to suppress evidence even though he told Duffy that he agreed that Duffy's reasoning was sound.  (D. 1, p. 5.)   But Duffy does not cite what evidence his attorney failed to suppress, and on what ground such a motion could have been based on, and none is apparent from the record.  Moreover, "counsel cannot be said to be deficient for failing to take to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues . . . [and] it is evidence that failing to make a motion with no chance of success could not possibly prejudice the outcome." *United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004).

Second, Duffy claims that Hayes failed to file a motion to dismiss the indictment after the government purportedly admitted to having no evidence as it pertains to counts 3 and 4.  (*Id.*, p. 11.)  This claim is fanciful.  The government clearly had enough evidence to obtain an indictment on these counts; and, certainly, never would have admitted to having no evidence on counts it charged.  Duffy's attorneys were not deficient for failing to file a frivolous motion.  *Carter*, 355 F.3d at 924.

Third, Duffy alleges that Riggins failed to argue for a lower plea deal. (*Id.*, p. 6.)  But "[w]hether [Riggins] could have negotiated a better plea deal is irrelevant to

the issue of prejudice in the ineffective assistance context." *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006).

Fourth, he complains that Riggins failed to argue for a reduction in restitution.  (D. 1, p. 6.)  But Riggins secured the most favorable amount of restitution that the government was willing to agree to.  (Crim. D. 67, ¶¶ 17, 18.) And Duffy agreed to pay both of the minor victims restitution in the amount $9,000 each, and he waived his right to appeal restitution.  (Crim. D. 67, ¶¶ 17, 18, 69, 70.)

Duffy has failed to show ineffective assistance of counsel.

## IX.    Duffy's Guilty Plea Was Knowing and Voluntary

"In order for a plea to be valid, it must be made voluntarily, knowingly, and intelligently." *United States v. Hays*, 397 F.3d 564, 567 (7th Cir. 2005) (citing cases).  A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea.  *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir.1989) (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)).  In evaluating the constitutional validity of a guilty plea, courts look to the totality of the circumstances surrounding the plea and grant the defendant's solemn declaration of guilt a presumption of truthfulness.  *United States v. Moussaoui*, 591 F.3d 263, 277 (4th Cir. 2010).

Duffy claims that his guilty plea was unknowing and involuntary.  He says his plea was involuntary because: (1) the Court informed him at the plea hearing that he would be sentenced to a term between 240 and 288 months in prison, but at

26

sentencing the Court changed the terms to 240 to 300 months in prison; and (2) he was coerced, threatened, and forced to plead guilty.   (D. 1, pp. 13-17; 25-29.)

This argument conflicts with his sworn statements at the plea colloquy.  And Duffy cannot go back against his knowing and voluntary statements now.   The "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir.1999).  The statements made by Duffy in the plea agreement and during the plea hearing are presumed to be true. *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000); *see also United States v. White*, 597 F.3d 863, 868 (7th Cir.2010) (stating that "[v]oluntary responses made by a defendant under oath before an examining judge ... are binding.").

## A. Duffy Fully Understood the Terms of The Plea Agreement

First, Duffy alleges that at the guilty plea hearing, the Court "stated several times that "the deal was for 240 to 288 months and the prosecution agreed" but became 240 to 300 months at the sentencing hearing.  (D. 1, p. 13.)

This argument is based on one miscalculation that was identified and remedied immediately.  At the beginning of the plea hearing, the Court confirmed that the parties agreed to a term of 20 to 25 years in prison.  (P. Tr., pp. 8-9.)  But, three times, the Court inadvertently misstated the number of months, saying the agreement was to 240 to 288 months (the correct number is 240 to 300 months.  (P. Tr., pp. 8-10.)

27

Duffy cannot show this mislead him.  During the same hearing, the Court

realized its mistake and advised the parties of its error:

> THE COURT:  We're going to go over it maybe a little more, but the
> plea agreement calls for a specific sentence of a term of imprisonment
> between 20 and 25 years.  Now, I think you said 24 years.  Is it –
>
> MR. RIGGINS:  No, it's 25, Your Honor.
>
> MS. PRESTON:  Twenty-five, Your Honor.
>
> THE COURT:  Twenty-five years?  Maybe I misheard you. So it's
> between 20 and 25 years is what it calls for and at least 60 months and
> up to a lifetime term of supervised release following the term of
> imprisonment.  Now, you heard that the government is going to seek
> lifetime supervised release, right?
>
> THE DEFENDANT:  Yes, I did.
>
> THE COURT:  And again, the parties would be free to argue anywhere
> between 20 and 25 years for your term of imprisonment.  Do you
> understand that?
>
> THE DEFENDANT:  Yes, sir, I do.

(P. Tr. pp. 15-16.)

Thus, Duffy confirmed that he understood the plea and was not misled by the

Court's momentary misstatement.  He cannot go back on that now.  *Stewart*, 198

F.3d at 987.  So, while he baldly claims that the plea agreement was changed

without his knowledge, that is patently false.  (D. 1, pp. 13-14.)

Duffy knowingly and voluntarily entered the plea agreement.

## B. Duffy Was Not Coerced or Forced to Plead Guilty

Duffy also claims that, despite his reluctance to plead guilty, he was coerced

into doing so.  (D. 1, p. 6.)  He claims that Riggins used "slow and steady coercion

with subtle threats" that more charges would be filed against him if he did not plead guilty, and the government told him that if he refused the offer, it would supersede the indictment with more charges.  (D. 1, pp. 6, 19-20.)  Duffy also claims that the government threatened to stack the jury with mothers from upper suburbia areas, and if the government did not win the trial, it would make sure that the state filed charges against Duffy (he claims Hayes was present during these statements).  (*Id.*, p. 20.)

As an initial matter, Duffy has not alleged an ineffective assistance of counsel claim against Riggins or Hayes, therefore, any such claim is waived.  *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).  If, however, Duffy's claims can liberally be construed as ineffective assistance of counsel claims, Duffy's claims still do not prevail.  He cannot show contemporaneous evidence that he would have gone to trial—he pleaded guilty, after all.  *Lee*, 137 S. Ct. at 1967.

Regardless, Duffy's claims miss the mark.  First, prosecutors may "reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged.  *Bordenkircher v. Hayes*, 434 U.S. 357, 358, 365 (1978).  Duffy complains about standard plea negotiation practices.  Second,  the government never told Duffy that it would stack the jury with suburbia mothers or pursue a state court conviction.  Duffy has presented no evidence to support these bald assertions.  *Topi*, 264 F. App'x at 506

In all events, Duffy's purported reluctance is different from involuntariness:  "the question . . . is whether [Duffy's] guilty plea was voluntary, not whether he had

reservations about his decision to admit guilt. *United States v. Warren*, 86 F. App'x 974, 976 (7th Cir. 2004). The record here does not support involuntariness. In fact, the Court asked Duffy under oath whether he understood that he had the right to plead not guilty, to which he responded "yes," and whether anyone had threatened him or forced him to plead, to which he said "no." (P. Tr., pp. 10, 15, 30.)

Duffy's claim cannot withstand scrutiny.

## X.   Duffy's Remaining Claims Are Waived and Procedurally Defaulted

Finally, Duffy raises several claims outside the context of ineffective assistance of counsel. He objects to his criminal history points, sentencing guideline enhancements, the length and terms of Duffy's supervised release, and claims that the Court was biased. (D. 1, pp. 13-17; 19-20; 25-29.) These claims are waived and defaulted.

### A.   Duffy Has Waived All Non-Ineffective Assistance Claims

Duffy signed a plea agreement and the collateral review waiver in his plea reads:

> **70. Later Legal Challenges:** Additionally, the Defendant expressly agrees not to contest, or seek to modify, the Defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the Defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment. However, if the Defendant files such a motion, the Government may oppose the motion on any other grounds. Furthermore, should the

> Defendant seek to appeal an adverse ruling of the district court on
> such a motion, the Government may claim that this waiver bars such
> an appeal.  As concerns the Section 2255 waiver, the waiver
> does not prevent claims, either on direct or collateral review, that the
> defendant received ineffective assistance of counsel.

(Crim. D.  67, ¶¶ 69, 70.)

This waiver clearly encompasses Duffy's claims here, outside of his ineffective assistance of counsel claims.  "Generally speaking, appeal waivers are enforceable and preclude appellate review."  *United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016).  Courts "will enforce an appeal waiver in a plea agreement if the terms of the waiver are clear and unambiguous and the defendant knowingly and voluntarily entered into the agreement."  *United States v. Worden*, 646 F.3d 499, 502 (7th Cir. 2011).

The terms are clear and unambiguous.  Duffy makes no contention that some exception to this general rule applies, and none appears to be present.  Therefore, the waiver, which is clear and unambiguous, is enforceable.  *Id.*

This Court should dismiss these claims as waived.

## B. Waiver Aside, Duffy Has Procedurally Defaulted these Claims

Beyond waiver, Duffy's claims are procedurally defaulted because he failed to present these claims for direct appellate review.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).

"A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009));

*see also Massaro v. United Stats*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998).  Duffy has procedurally defaulted these non-ineffective assistance claims.

Thus, he must show either (1) cause and prejudice or (2) actual innocence. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Bousley*, 523 U.S. at 622).

Duffy makes no claim of either.  This Court should treat that as a waiver itself.  *Id.*  "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues." *Berkowitz*, 927 F.2d at 1384 (citing cases); *see also Dunkel*, 927 F.2d at 956.  Moreover, "[a]rguments raised for the first time in a reply brief are waived."  *United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009) (citing *Porco v. Trustees of Indiana University*, 453 F.3d 390, 395 (7th Cir. 2006)).  Like his default, Duffy has waived this claim.

In all events, Duffy cannot show either exception.  First, he has not made a claim of innocence.  Thus, this Court should "restrict [its] analysis to the cause-and-prejudice standard."  *Delatorre*, 847 F.3d at 843 (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)).  "To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim."  *Id.* (citing *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989)).

32

Duffy cannot show good cause.  *Id.*  He offers no explanation for his failure to raise any of his claims on appeal.  Nor is one apparent.

Nor can he show prejudice.  "In order to show prejudice, [Graham] must prove that any errors worked to his '*actual* and substantial disadvantage.'" *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in *Frady*).  That means showing that "there is a reasonable probability that the result of the trial would have been different."  *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).  But he has not shown prejudice on any of his claims, and nor can he do so.  Thus, this Court should decline to consider either.  *See Delatorre*, 847 F.3d at 843.

This Court should summarily deny Duffy's claims (raised outside the ineffective assistance of counsel purview) as waived and defaulted.

### C.      Regardless, These Claims Are Without Merit

First, Duffy argues that he should be a criminal history category 4 instead of a criminal history category of 6.  (D. 1, pp. 14-15.)  He asserts that his "2007 Florida conviction is really a violation of probation offense because in the state of Florida, violations are listed as the original charges that placed him on probation. (D. 1, p. 14.)  But he was convicted for dealing in stolen property and sentenced to two years in prison.  (PSR ¶ 59.)

Second, Duffy claims that he should not have received three points for a 2006 conviction for escape because he "was already incarcerated and the escape was an

included offense." (D. 1, p. 14.)  But that case was assigned a separate cause number, and he receive a consecutive sentence.  (PSR ¶ 57.)  That claim fails.

Next, Duffy challenges enhancements to his sentencing guidelines.  First, he objects to a two-level enhancement for Count 1, (D. 1, p. 15), but U.S.S.G. § 2G2.1(b)(2)(A) requires a two point enhancement when the offense involved the commission of a sexual act.  (PSR ¶ 25.)  Next, he claims no two-level enhancement should have applied to Count 2, (D. 1, p. 15), but the government dismissed Count 2.  Finally, Duffy appears to dispute the multiple count grouping calculation, bit one unit per count was properly assigned to his guideline calculation, pursuant to U.S.S.G. § 3D1.4(a)(b) and (c).  (PSR ¶ 39.)

Duffy also complains that the Court imposed a harsh term of supervised release, and he disputes four of his supervised release conditions.  (*Id*.)  However, Duffy agreed that the Court would determine which standard and special conditions of supervised release to apply in this case, and these claims are waived.  (Crim. D. 67, ¶¶ 13,69, 70.)

Last, Duffy claims that Judge Sweeny allowed personal feelings to argue his reasonings for a harsh sentence, (D. 1, p. 16), but adverse judicial rulings do not constitute judicial bias, *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Duffy did not suffer any prejudice.

## CONCLUSION

For all the foregoing reasons, the United States respectfully urges the Court to deny Duffy's § 2255 motion.

34

Respectfully submitted,


JOHN E. CHILDRESS
Acting United States Attorney


By:   s/Tiffany Preston
Tiffany Preston
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on August 17, 2021, a copy of the foregoing

MEMORANDUM IN OPPOSITION TO 28 U.S.C. § 2255 MOTION

was filed electronically and that a copy was mailed the following business day, by

first class U.S. Mail, postage prepaid and properly   addressed to the following:

Joshua Shane Duffy
Reg. No. 15464-028
HAZELTON FCI
P.O. Box 5000
Bruceton Mills, WV 26525

s/ Tiffany Preston
Tiffany Preston
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-6125
E-mail: tiffany.preston@usdoj.gov

36